IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN MUSSER,

       Plaintiff,

v.

       Case No. 3:24-CV-02045-NJR

COLONNADE SENIOR
DEVELOPMENT, LLC,

       Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Steven Musser brings this employment discrimination action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging wrongful termination by Defendant Colonnade Senior Development, LLC ("Colonnade"). (Doc. 1). Colonnade, the only defendant in this action, has not appeared to defend the case. Having obtained an entry of default from the Clerk of Court, Musser now moves for default judgment under Rule 55(b)(2) and for entry of an award against Colonnade. (Doc. 32).

### FACTUAL AND PROCEDURAL BACKGROUND

Musser was hired by Colonnade as a receptionist in October 2023. (Doc. 1 at ¶ 1, Complaint). He suffers from cancer and several mental health-related conditions, including bipolar disorder and depression. *Id.* ¶ 14. At or around the time when he began his employment at Colonnade, Musser requested accommodations so that he could attend medical appointments to treat his various health conditions. *Id.* ¶ 16. Although he generally scheduled his medical appointments outside of normal working hours, Musser

occasionally had to attend appointments during work. *Id.* ¶ 18. Every time he did so, he received a write-up. *Id.* Musser alleges that Colonnade's refusal to offer reasonable accommodations left him "riddled with stress and anxiety." (Doc. 11-1 ¶ 18, Musser Aff.).

On or around July 19, 2024, Musser experienced severe depression and became suicidal. (Doc. 1 ¶ 21). During this episode, he was unable to notify Colonnade of his absence from work. *Id.* ¶ 22. The next day, Musser explained the situation to his superiors and told them that he had a psychiatrist appointment scheduled for July 23, 2024. *Id.* ¶ 23. Musser had the day off on July 23 and attended his appointment as scheduled. *Id.* ¶ 25. His psychiatrist recommended that he take a few days off, until July 29, 2024, to recover. *Id.*

On July 24, 2024, Colonnade terminated Musser. *Id.* ¶ 26. His termination "caused [him] to feel a lack of self-worth" and made him feel "embarrassed and humiliated." (Doc. 11-1 ¶ 19). Musser attributes his termination to his disability and to the fact that he allegedly "engag[ed] in protected activity, such as requesting accommodations and attending medical appointments." (Doc. 1 ¶ 30). Any justification that Colonnade provided for his termination—which Musser did not share in his complaint—was allegedly pretextual. *Id.* ¶ 31.

Musser filed a three-count complaint in this Court on August 27, 2024. He alleges three theories of liability under the ADA: disability-based discrimination (Count I), failure to accommodate (Count II), and retaliation (Count III). Musser properly and timely served his complaint on Colonnade, which has failed to file a responsive pleading or otherwise enter an appearance in the case. (Doc. 11 at ¶ 25, Mem. in Support of Mot.

for Default Judgment). On October 15, 2024, the Clerk of Court entered default against Colonnade under Federal Rule of Civil Procedure 55(a). (Doc. 9).

On October 29, 2024, Musser filed the instant motion for default judgment, along with his own affidavit and that of his attorney to support his claimed damages. (Docs. 10, 11-1, 11-2). His damages include backpay ($3,696.00), compensatory damages ($12,500.00), punitive damages ($12,500.00), attorney's fees and costs ($5,305.00), and pre- and post-judgment interest. (Docs. 11 at p. 9; 11-1 at p. 4-5; 11-2 at p. 3).

On March 17, 2025, a hearing on Musser's motion was held before Senior District Judge J. Phil Gilbert. (Doc. 15).[1] Judge Gilbert allowed Musser's claims for backpay, attorney's fees and costs, and post-judgment interest. (Hr'g. Tr. p. 1-5). Judge Gilbert denied Musser's claim for pre-judgment interest and reserved ruling on his claims for compensatory and punitive damages, pending the submission of additional evidence. *Id.* at p. 5. On May 2, 2025, Musser offered a supplemental submission consisting of his medical records to support his claimed damages. (Docs. 18, 18-1).

## LEGAL STANDARD

Rule 55(a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. FED. R. CIV. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed.

---

[1] The case was transferred to the undersigned by Administrative Order entered on May 5, 2025 (Doc. 19).

2010). "Once default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)).

Under Rule 55(b)(2), "the court may enter a default judgment if the amount at issue is for a sum certain." *Am. Nat'l Bank & Trust Co. of Chi. v. Alps Elec. Co.*, No. 99 C 6990, 2002 WL 484845, at *1 (N.D. Ill. Mar. 29, 2002) (citing FED. R. CIV. P. 55(b)(2)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Instead, the plaintiff must introduce evidence on the issue of damages, and the district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.*

## DISCUSSION

As an initial matter, the Court will not disturb Judge Gilbert's previous findings regarding Musser's damages. The Court will thus grant Musser's claims for backpay ($3,696.00), attorney's fees and costs ($5,305.00), and post-judgment interest. Musser's claim for pre-judgment interest will be denied. That leaves Musser's claims for compensatory and punitive damages, which are addressed below.

1. Compensatory Damages

In an employment discrimination case, "[t]he availability of compensatory damages apart from back and front pay demonstrates Congressional recognition that discriminatory employment practices inflict injuries beyond mere loss of a paycheck or reduction in wages and benefits, and Congressional intent that victims of employment

discrimination should be compensated for those non-pecuniary injuries." *Williams v. Pharmacia Opthalmics, Inc.*, 926 F. Supp. 791, 794 (N.D. Ind. 1996). "When assessing the propriety of a compensatory damages award, relevant inquiries may include whether the award is monstrously excessive, whether there is no rational connection between the award and the evidence, and whether the award is roughly comparable to awards made in similar cases." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 483-84 (7th Cir. 2004) (internal quotation marks omitted).

Musser seeks a compensatory damages award of $12,500 to compensate him for the psychological and reputational injuries he sustained from his termination. Considering Musser's struggles with mental health, Colonnade's unwillingness to offer reasonable accommodations, and his subsequent termination, this request is well within a range of reasonable alternatives. Application of the *Lampley* factors confirms as much. An award of $12,500 is not "monstrously excessive" considering what happened to Musser. He suffered a severe mental health-related event, which included him becoming suicidal. When this episode caused him to miss work, he was allegedly terminated. Under the circumstances, $12,500 dollars is not "monstrously excessive". It is also apparent that there is a "rational connection" between Musser's claimed compensatory damages and Colonnade's misconduct. Musser's affidavit explains how Colonnade's refusal to offer reasonable accommodations left him "riddled with stress and anxiety." Then, after he was terminated, Musser experienced "a lack of self-worth" and felt "embarrassed and humiliated." These types of psychological injuries are common in wrongful termination cases, and they support the necessary "rational connection" to a compensatory damages

award. *See id.* at 484 (evidence of "negative effects on [plaintiff's] emotional state" supported rational connection to compensatory damages award). Finally, Musser's claimed compensatory damages award is "roughly comparable to awards made in similar cases." *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833-34 (7th Cir. 2013) ($100,000 compensatory damages award not excessive for failure to accommodate plaintiff's severe back pain; collecting comparable cases).

    2.  Punitive Damages

Musser also seeks $12,500 in punitive damages. At the March 17 hearing on Musser's motion for default judgment, Judge Gilbert requested additional evidence to support Musser's claimed damages, including punitive damages. On May 2, 2025, Musser submitted 29 pages of his medical records in response to this request. These records reveal Musser's prescriptions, his physical and mental health profile, surgical history, and appointment notes from his healthcare providers, which cover his vitals, allergies, substance use, and patient complaints. (Doc. 18-1). They also show that, on March 28, 2025, Musser requested a "letter" from his physician, Dr. Christopher Johnson, that would explain "his state of mind at the time of his termination and for several subsequent months when his mood was affected." *Id.* at p. 8. Dr. Johnson also noted that "the reason for today's visit is regarding [Musser's] recent court appearance regarding a wrongful termination." *Id.* But Dr. Johnson declined to provide a responsive letter because Musser was under the care of another doctor at the time of his termination, and Dr. Johnson "wasn't event aware of [Musser's] termination from his previous job until just now." *Id.*

Punitive damages are available in an employment discrimination case if three conditions are satisfied: (1) "the employer acted with knowledge that its actions may have violated federal law;" (2) "the employees who discriminated against [the plaintiff] are managerial agents acting within the scope of their employment;" and (3) the employer failed to "engage[] in good faith efforts to implement an antidiscrimination policy." *Lampley*, 340 F.3d at 482 (internal quotation marks omitted). Here, while Musser's medical records offer some insight into his overall physical and mental health, they do not offer any information concerning Colonnade's state of mind—*i.e.*, whether it acted "with knowledge" that it might be violating federal law, or whether it "engaged in good faith efforts to implement an antidiscrimination policy." Without evidence to help answer these questions, the Court is left in the same position as Judge Gilbert on March 17— unable to determine the propriety of a punitive damages award.

More fundamentally, however, Musser's medical records do not reveal a nexus between his mental health struggles and his termination from Colonnade. Indeed, the only relevant note is Dr. Johnson's refusal to provide a "letter" concerning Musser's state of mind when he was terminated because Dr. Johnson was not treating Musser at the time. With these evidentiary deficiencies, the Court is reluctant to award punitive damages. *See Soderbeck v. Burnett Cnty., Wis.*, 752 F.2d 285, 290-91 (7th Cir. 1985) (punitive damages "reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it, and not just to a lawyer.").

CONCLUSION

For these reasons, the Motion for Default Judgment filed by Plaintiff Steven Musser (Doc. 10) is **GRANTED in part** and **DENIED in part**. Musser's requests for backpay, compensatory damages, attorney's fees and costs, and post-judgment interest are **GRANTED**. His requests for punitive damages and pre-judgment interest are **DENIED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Musser and against Defendant Colonnade Senior Development LLC for a total award of **$21,501.00**. Consistent with Judge Gilbert's finding on March 17, 2025, moreover, the Court awards post-judgment interest pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

**DATED:  August 18, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**